UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NICKOYAN WALLACE<br>v.<br>UNITED STATES OF AMERICA | C.A. No. 04-363-L |

**MEMORANDUM AND ORDER**

Ronald R. Lagueux, Senior United States District Judge.

This matter is before the Court on remand from the United States Court of Appeals for the First Circuit, which granted Petitioner Nickoyan Wallace's application for a certificate of appealability ("COA"). Wallace had sought the COA to review this Court's ruling on his amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (motion to vacate), in which, after granting relief on his claim for re-sentencing, this Court declined to reach certain claims asserted by Wallace. In its order of remand the Court of Appeals directed this Court to address the other claims presented by Wallace in his motion to vacate sentence. See Nickoyan Wallace v. United States, No. 06-1981, Judgment at 2 (1st Cir. February 16, 2007). This Court now addresses those claims.

I. BACKGROUND AND TRAVEL

On September 25, 2000 two armed men robbed D & B Guns, a

federally licensed firearms dealer located on North Main Street in Providence. While pointing guns at the store owner and a clerk, the men took several guns from display cases inside the store and then fled on foot. The store clerk later identified Wallace as one of the two robbers. On October 5, 2000, Wallace was arrested in a third-floor apartment at 181 Pleasant Street in Providence, located approximately one mile from D&B Guns. The apartment was rented by Wallace's brother and accomplice in the robbery, Timi Wallace ("Timi").[1] In a search of the apartment police found, hidden in a shower compartment, five of the six guns that had been stolen, and as well as other firearms, hundreds of rounds of ammunition, and a Florida driver's license containing Wallace's picture, but with false information therein. Police also found $5,000 in cash, wrapped in aluminum foil in the pocket of a pair of jeans.

On October 18, 2000, Wallace was indicted on charges of: (1) obstruction of interstate commerce by robbery of certain firearms in violation of 18 U.S.C. § 1951; (2) conspiracy to so obstruct; (3) robbery of firearms from a federally-licensed dealer, in violation of 18 U.S.C. § 922(u) and 18 U.S.C. § 2; and (4) brandishing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

---

[1] Timi Wallace absconded but was subsequently found and separately convicted for the same offenses.

The first jury trial, in which Wallace was represented by attorneys Thomas F. Connors and Joseph J. Voccola, ended in a mistrial. At that trial, the Government's witnesses included the store owner, Donn DiBiasio, the store clerk, Donna Gallinelli, Wallace's friend, Lisa Gallant, and a prison informant, Willie Preston.

At his second trial, at which he was represented by Attorney Francis J. Flanagan, Wallace was found guilty by a jury on all four charges. Witnesses included DiBiasio, Gallinelli and Preston but not Lisa Gallant, who was not called by either the Government or the defense. Additional facts concerning the proceedings are discussed infra, in connection with Wallace's claims.

The Presentence Investigative Report ("PSR") calculated a total offense level of 29, which included two points for obstruction of justice based on Wallace's false testimony at trial concerning his involvement in the offense (see USSG § 3C1.1), with a criminal history category of II.[2] The Court imposed a total

---

[2] At sentencing Wallace, through counsel, objected to the assessment of the additional points for obstruction of justice, arguing that he had exercised his constitutional right to testify, and that the jury's disbelief of his testimony was not sufficient to establish his willful obstruction of justice. This Court disagreed, stating that the right to testify on one's own behalf "does not include the right to perjure one's self" (see Transcript of Sentencing Hearing Conducted on January 23, 2002 ["Sent. Tr."] at 8), and retained the additional points.

sentence of 204 months (17 years) imprisonment, followed by three years of supervised release.

Wallace appealed, represented by appointed counsel Jon R. Maddox. On August 21, 2003, the Court of Appeals affirmed Wallace's conviction on all counts. United States v. Wallace, 71 Fed. Appx. 868 (1st Cir. 2003). Further review was denied by the U.S. Supreme Court on March 22, 2004. In re: Wallace, 541 U.S. 934 (2004).[3]

The instant motion to vacate sentence was filed on August 11, 2004. In his motion Wallace raised eleven separate grounds for relief, including claims of ineffective assistance of counsel, prosecutorial misconduct and challenges to certain sentencing adjustments. These claims are discussed in further detail infra. In its response, the Government objected to all of these claims.

Thereafter, Wallace sought to amend his § 2255 motion to add a claim that his counsel was ineffective for failing to challenge an "unwarranted double-counting" in the imposition of his sentence. The Government concurred that double-counting had occurred in the calculation of Wallace's sentence so as to warrant re-sentencing and requested that a revised PSR be prepared in connection with re-

---

[3] A second appeal, which Wallace pursued *pro se* from this Court's denial of his motion to vacate conviction pursuant to Fed. R. Civ. P. 60(b), was likewise denied by the Court of Appeals. See 82 Fed. Appx. 701 (1st Cir. 2003).

sentencing. See Government's Response to Petitioner's Motion for Leave to Amend's 2255[sic] ("Gov't Resp.") at 2-3. Wallace opposed the preparation of a revised presentence report.

This Court then issued a Memorandum and Order granting the motion to amend and granting § 2255 relief solely on the basis of the calculation of Wallace's sentence. See Memorandum and Order dated May 26, 2006 ("Memorandum and Order"). The Court ordered that the matter be set down for resentencing; that counsel be appointed to represent Wallace at the resentencing hearing; that the U.S. Probation Office prepare a revised PSR; and that counsel be permitted to file presentence memoranda on (1) whether the Sentencing Guidelines would be mandatory or advisory at Wallace's resentencing, and (2) the extent to which this Court could impose a greater or lesser sentence than the sentence originally imposed. See id. at 11-12. In so ruling, this Court did not find it necessary to reach the other claims asserted by Wallace. Wallace's application for a COA was denied by this Court on June 21, 2006.

A resentencing hearing was held on October 25, 2006. After considering a revised presentence report (PSR) and presentence memoranda submitted by counsel, this Court again found Wallace's net offense level under the Guidelines to be 29, including a two-level adjustment for obstruction of justice based on Wallace's

testimony during his trial. (See Transcript of Re-sentencing Hearing conducted on October 25, 2006 ["Re-sent Tr."] at 17-21.) With a criminal history category II, Wallace's guideline range was 97 - 121 months for counts 1, 2 and 3, and 84 months on count 4. This Court sentenced Wallace to 120 months imprisonment on counts 1, 2 and 3 to be served concurrently and to 84 months imprisonment on count 4, to be served consecutively, for a total of 204 months imprisonment. Wallace filed a timely appeal from this resentencing, which appeal is currently pending before the Court of Appeals.[4]

In the meantime, Wallace had applied to the Court of Appeals for a COA from this Court's ruling on his amended § 2255 petition, contending that the refusal to address Wallace's other § 2255 claims constituted an implicit denial of those claims. The Court of Appeals granted a COA, finding that this Court's grant of relief as to the sentencing claim only "neither resolved nor mooted the additional claims directed at the underlying conviction." See Wallace v. United States, No. 06-1981, Judgment at 2 (1st Cir.

---

[4] This appeal was stayed by the Court of Appeals on May 10, 2007 pending this Court's resolution of Wallace's remaining § 2255 claims. See United States v. Wallace, No. 06-2606, Order of Court dated May 10, 2007 (1st Cir.). A second appeal from the resentencing was dismissed as duplicative on December 14, 2006.

February 16, 2007). The Court of Appeals consequently remanded this matter and directed this Court to address all of the remaining claims asserted by Wallace in his motion to vacate. Id.

At a status hearing conducted on June 13, 2007 both Wallace and the Government declined an opportunity to file any additional papers in connection with Wallace's remaining § 2255 claims, indicating that they were content to rest on their previously filed submissions concerning those claims. The Court has reviewed all the materials filed and now this matter is ready for decision.

Remaining § 2255 Claims

Wallace's remaining § 2255 claims may be summarized as follows:

(1) Wallace claims ineffective assistance of counsel based on counsel's failure to call a potentially favorable witness at trial, to challenge identification evidence which Wallace alleges was suggestive and improper and to adequately challenge the testimony of a Government witness (see Motion to Vacate, Grounds 1, 2 and 3), and also relies on various trial and post-trial errors by counsel (Id., Grounds 7 - 10).

(2) He alleges prosecutorial misconduct by the Government, including *inter alia* soliciting and using false testimony,

wrongfully using Wallace's booking photograph and Florida license photograph at trial, and making improper references to prejudicial facts not in evidence. (Id., Grounds 4, 5 and 6.)

(3) He challenges the two-point increase in his offense level for obstruction of justice as improper under Blakely v. Washington, 542 U.S. 296 (2004)(Id., Ground 11).

Each of these claims will be discussed in turn.[5]

## II. DISCUSSION

The pertinent section of § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

[5] Wallace requested an evidentiary hearing on several of his claims. However, no hearing is required in connection with any issues raised by his motion to vacate, because, as discussed infra, the files and records of this case conclusively establish that the claims in the motion to vacate are without merit. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted). See also Panzardi-Alverez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1978) (no hearing is required where the district judge is thoroughly familiar with the case).

28 U.S.C. § 2255, ¶ 1.

Generally, the grounds justifying relief under 28 U.S.C. § 2255 are limited. A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. United States v. Addonizio, 442 U.S. 178, 184-185, 99 S.Ct. 2235 (1979). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." Id. at 185 (internal quotations omitted).

Moreover, a motion under § 2255 is not a substitute for direct appeal. United States v. Frady, 456 U.S. 152, 165 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" for the default and "actual prejudice" or, alternatively, that he is "actually innocent" of the offenses for which he was convicted. Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). See Brache v. United States, 165 F.3d 99, 102 (1st Cir.1999). However, claims of ineffective assistance of counsel are not subject to this procedural hurdle. See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

This Court will first address Wallace's claims of prosecutorial misconduct and will then turn to his ineffective assistance claims and lastly, to Wallace's Blakely claim.

A. Prosecutorial Misconduct

Wallace cites several alleged examples of prosecutorial misconduct which he contends warrants § 2255 relief. None of these claims have merit.

1. Alleged Use of False Testimony

Wallace first claims that the Government solicited and used false testimony of certain Government witnesses, to convict him. He points to alleged differences in the testimony of Gallinelli and DiBiasio between the first and second trials regarding the robber's appearance which, he contends, rendered their testimony at the second trial false. He also contends that certain inaccuracies in Preston's testimony rendered his testimony false.

This claim fails for several reasons. As to Gallinelli and DiBiasio, this claim is based on the premise that the respective testimony of each was substantially different between the first and second trial, particularly as to Wallace's appearance. However, the trial record does not bear this out. At the first trial, Gallinelli identified Wallace in the courtroom as one of the persons who robbed the store and stated that he had more facial hair at trial than at the time of the robbery. (See Transcript of Trial conducted on February 15, 2001 ["2/15/01 Tr."] at 26-27.) On cross examination, Gallinelli testified that Wallace had less

facial hair on the day of the robbery than he did at trial and that the robber had "possibly a very light mustache." (Id. at 59-60.) When pressed further on cross, she remembered the robber having "slight facial hair" and a "small mustache" but that she could not remember what the robber's hair looked like. (Id. at 68.) She also noted that he had Band-Aids on his face. (Id. at 48, 68.)

At the second trial Gallinelli identified Wallace in the courtroom (see Transcript of Trial conducted on November 6, 2001 ["11/6/01 Tr."] at 45) and described Wallace's appearance at the time of robbery as "not being clean-shaven. I do remember a mustache, but I really can't describe how much [facial] hair there was." (Id. at 46.) She also stated that he had Band-Aids on his face and neck and, when asked whether he looked different at trial than he did at the time of the robbery, she indicated "more facial hair." (Id. at 45, 46.)[6]

---

[6] The relevant colloquy was as follows:

Q. does he look any different today to you than he did on September 25, 2000?
A. he appears to have more facial hair.
Q. now, how about his hair?
A. I don't recollect his hair at all.
Q. OK. The day of the robbery, how do you describe what, if any, facial hair he had?
A. I remember him not being clean-shaven. I do remember a mustache, but I really can't describe how much here there was.
Q. To your memory, did he have a beard?
A. I don't recall.
Q. when you say "not clean-shaven", what do you mean by that?

Similarly, DiBiasio testified at the first trial that the first robber (Wallace) was "shorter and clean-shaven and did not have long hair" (2/15/07 Tr. at 117; Transcript of Trial conducted on February 16, 2001 ["2/16/01 Tr."] at 32) -- while at the second trial he stated that the first robber was shorter than the second, had "Quite a few Band-Aids on his face ... he was kind of scruffy. Looked like he had maybe a two or three day whatever growth of beard" (11/5/01 Tr. at 34-35). When asked on cross-examination concerning his testimony at the first trial that the robber was "clean shaven," DiBiasio explained that he did not interpret that to mean Wallace had no facial hair at all. (Id. at 69-70.)

In view of the foregoing, the characterization of the testimony of Gallinelli and DiBiasio as false is simply not supported by the record -- or by the jury verdict, which indicates that the jury found the testimony of these witnesses to be credible beyond a reasonable doubt. The fact that the testimony of Gallinelli and DiBiasio concerning Wallace's role in the robbery differed from Wallace's own testimony does not render their testimony false and the prosecutor's use of it improper. See Cohen

---

A. well, I know that he had a mustache and it was just--it appeared to be just rough, from what I recollect, but I really don't recall.
(11/6/01 Tr. at 45-46.)

v. United States, 996 F. Supp. 110, 118 (D.Mass. 1998) ("To question a witness, and receive an answer unfavorable to the opposing party, does not amount to prosecutorial misconduct unless the prosecutor *knows* such testimony is perjured."). Indeed, both the jury and this Court found that it was Wallace's testimony that was not credible. Thus, this claim of prosecutorial misconduct must fail.

Wallace's claim that Preston's testimony was false also misses the mark. Preston testified at the second trial that when he met Wallace at the Wyatt Detention Facility, Wallace told him of his participation in the robbery of a gun store, that he was linked to the robbery because of a cell phone left at the robbery scene and that he 'had a different look' and had grown facial hair after the robbery. (See 11/6/01 Tr. at 17-18.) Wallace focuses on Preston's estimates of how long he knew Wallace (a little over a year before the second trial) and when Wallace's incriminating statements were made to him (approximately three months after he met Wallace in jail) (see id. at 17), and points out that these estimates could not have been accurate based on the actual time that Wallace arrived at the detention facility. These inaccuracies, according to Wallace, render Preston's overall testimony false.

This claim does not hold water. Putting aside the fact that

some of Preston's estimates were not that inaccurate (11 months, according to Wallace, as compared with Preston's estimate of "a little over a year"), those estimates were for the jury to assess as part of the credibility of Preston's overall testimony. See United States v. Hernandez, 109 F.3d 13, 15 (1st Cir. 1997)("[T]he credibility of a witness is a matter for the jury."). Here, the verdict suggests that the jury believed the main thrust of Preston's testimony, namely, Wallace's statements to Preston implicating himself in the robbery.

In short the testimony of Gallinelli, DiBiasio and Preston was not inherently false, and the Government's use of that testimony at trial was not improper.[7]

2. Alleged Improper Use of Photos

Wallace next claims that the Government's use of Wallace's booking photograph and Florida license photograph at trial misled the jury and violated his due process rights. Wallace bases his

---

[7] United States v. Young, 17 F.3d 1201 (9th Cir. 1994), on which Wallace relies, is totally distinguishable from the instant case. In Young, a police officer falsely testified that another officer found notebooks relating to drug manufacturing taped under the dashboard of the defendant's truck, when they were actually found in a paper bag on the floor of the truck. Id. at 1202. Because this false testimony made Young's involvement in the charged drug offenses more likely, the Ninth Circuit remanded for a new trial. Id. at 1208. Here, by contrast, the testimony of Gallinelli, DiBiasio and Willie Preston at the second trial did not contradict their respective testimony at the first trial. At most, there were semantic differences or minor discrepancies which were not significant to the outcome of the identification issue. Moreover, Gallinelli identified Wallace in court as one of the robbers.

claim on the fact that neither photograph was related to the eyewitness's identification of him. Wallace again misses the mark. These photos were clearly admissible on another issue.

The Florida license bearing Wallace's photo and false information was found in the Pleasant Street apartment in the same location as five of the six guns that were stolen from the gun store. Neither that photo nor Wallace's booking photo served as a source of the eyewitness identification of Wallace as one of the robbers. Rather, the Government referred to both the license photograph and the booking photograph at trial to counter Wallace's assertion that he had always had a beard and mustache and that therefore he could not have been the clean-shaven man who committed the robbery in question. The photographs in question depicted Wallace with significantly less facial hair than he had at the trial,[8] supporting the testimony of Gallinelli and DiBiasio that he was "scruffy" and "unshaven" at the time of the robbery, and thus refuting Wallace's proffered defense of misidentification.

In short, both photos were relevant and clearly admissible, and their use at trial in no way constituted prosecutorial misconduct. Accordingly, this claim falls.

---

[8] The Court notes that at the time of trial Wallace had a full beard, mustache and a "dread locks" hairstyle.

3. Alleged Improper Closing Remarks

Wallace further claims that the Government's attorney made several improper remarks during closing argument, including impermissible vouching, comments that impermissibly shifted the burden of proof to Wallace and comments assuming facts not in evidence.[9]

At least one of these claims - that the prosecutor impermissibly vouched for the testimony of Preston - was raised and rejected on direct appeal. See Wallace, 71 Fed. Appx. 868 at *2-3 (deeming any error the Government may have made as harmless). As such, this claim may not be rehashed here. See Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994) (issues disposed of in a prior appeal may not be re-litigated by way of a 2255 motion)(citing Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967)); Murchu v. United States, 926 F.2d 50, 55 (1st Cir.

[9] Specifically, Wallace alleges that during her summation and rebuttal the prosecutor improperly (1) referenced a stipulation that defendant had signed; (2) referenced the Florida driver's license and booking photo and misrepresented other identification evidence; (3) vouched for the truthfulness of the testimony of Willie Preston concerning Wallace's ownership of the cell phone; (4) mentioned that the defendant did not offer any proof of the existence of James Coleman or that the cell phone was owned by him; (5) argued that Wallace owned or controlled the apartment where he was arrested; (6) assumed facts in evidence concerning whether Wallace communicated with his brother Kamal Wallace on the morning of the robbery and whether Kamal participated in the robbery; and (7) referenced Wallace's prior convictions. (Pet. Mem. at 37-41.)

1991)(same).

The remaining claims concerning the prosecutor's closing remarks are all devoid of merit. The prosecutor's reference in her closing argument to the stipulation that the stolen guns were firearms that traveled in interstate commerce in no way suggested that it was an admission of guilt or that Wallace bore the burden of proof.[10] Moreover, this Court informed the jury of the nature of the stipulation when it was introduced at trial and later instructed the jurors regarding the burden and standard of proof during the jury charge.

Similarly, the Government attorney's comments in her closing as to the dearth of evidence to substantiate the existence of a James Coleman fall far short of shifting the burden to the defendant and were within the boundaries of what a prosecutor may argue during summation. <u>See</u> <u>United States v. Roberts</u>, 119 F.3d 1006, 1014 (1st Cir. 1997) ("When a defendant advances a theory of the case, . . . this opens the door to an appropriate response by the

---

[10] The comment was as follows:

"Now, the defendant has agreed, and you've seen that because we have what's called a stipulation, that the guns stolen from Mr. DiBiasio's store, from D&B Guns, were all indeed firearms, and had traveled in interstate commerce. There's also no dispute that D&B Guns was indeed a federally licensed firearms dealer, and there's no dispute that the firearms that were stolen from the store were part of the business inventory."

(Transcript of Trial conducted on November 8, 2001 ["11/08/01 Tr."] at 8-9.)

prosecution, commenting on the quality of his witnesses or attacking the weak evidentiary foundation on which the defendant's theory of the case rested.") (ellipses and internal quotations omitted).[11]

Additionally, the prosecutor was not remiss in challenging Wallace's explanation that he merely used, but did not own, the cell phone left at the gun store by pointing to other evidence and inferences therefrom suggesting that this was not the case. Id. Accord United States v. Boulerice, 325 F.3d 75,86 (1st Cir. 2003)(same). These comments, when viewed in context, were not an attempt to shift the burden of proving Coleman's existence; rather, they were an attempt to tie Wallace to the cell phone left at the gun store by discounting Wallace's claim that the phone belonged to a man named Coleman.

4. Alleged Assuming of Facts Not in Evidence

Wallace's claims that the prosecutor assumed facts not in evidence in the course of her closing arguments are likewise without merit. The Court has reviewed the record and finds no

---

[11] Although Wallace cites Roberts as support for his claim, the prosecutor's remarks found improper in that case were markedly different from those here. In Roberts the prosecutor repeatedly referenced the defendant's failure to testify, stating that when a defendant does testify and offer evidence, "the defendant has the same responsibility [as the government] and that is to present a compelling case"; the Court found that these comments impermissibly shifted the burden of proof. Id. at 1015. No such comments were made here.

indication that facts were improperly assumed. The prosecutor's comments concerning Wallace's control of the Pleasant Street apartment and the money found there referenced Wallace's own admission, upon cross-examination, that he had keys to the apartment, giving him the power to enter and exit at will. (11/8/01 Tr. at 14-15.)

The allegation that the prosecutor impermissibly assumed that he and his brother Kamal had a phone conversation before the robbery, also misses the mark. During closing, the prosecutor highlighted the evidence that a phone call had been placed from Kamal to Wallace's pager on the morning of the robbery and that a call was made on the cell phone issued to James Coleman to Kamal four minutes later. (Id. at 16.) She noted that later phone calls from Kamal to the cell phone went unanswered, suggesting that this was because the phone had been left at D&B Guns. (Id. at 17.) This was permissible. See United States v. Smith, 982 F.2d 681,683 (1st Cir.1993) (a prosecutor "may attempt to persuade the jury to draw suggested inferences unfavorable to the defense, as long as the prosecutor's own opinion as to the witness' credibility is not urged on the jury")(emphasis in original).

The same is true of the prosecutor's challenge of Wallace's defense that there were multiple users of the cell phone in

question and her reference to the cell phone call records for the period before the robbery as proof negating that theory. See United States v. Mount, 896 F.2d 612, 625 (1st Cir.1990) (where adequate evidence exists "to support an inference, the prosecutor was entitled to ask the jury to reach that conclusion"). There is no basis for Wallace's claim that the prosecutor's remarks were impermissible. Her comments during summation merely highlighted permissible inferences which could be drawn from the evidence presented.

Finally, Wallace challenges the prosecutor's reference to his past convictions in determining his credibility. This argument likewise fails. Rule 609 of the Federal Rules of Evidence specifically allows for consideration of prior convictions of the accused or other witnesses when, as here, the probative value of the prior conviction outweighs the prejudicial effect. Fed. R. Evid. 609(a)(1).

In light of the host of evidence that the Government presented during the course of the trial, even if any remarks in the prosecutor's summation could be deemed improper, there was no prejudice to Wallace. He makes no showing that the outcome of the trial would have been different absent the remarks about which he complains. See United States v. Wilkerson, 411 F.3d 1, 9 (1st Cir.

2005)(observing that prosecutor's statement in final argument "did not "so poison ... the well that the trial's outcome was likely affected.")(internal quotations omitted).

Thus, Wallace's claims that the Government prosecutor assumed facts not in evidence during final arguments are without merit and, thus, rejected.

B. Ineffective Assistance Claims

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

> (1) That his counsel's performance "fell below an objective standard of reasonableness"; and
>
> (2) "[A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002).

The convicted person bears the burden of identifying the specific acts or omissions constituting the allegedly deficient performance.

Conclusory allegations or factual assertions that are fanciful, unsupported or contradicted by the record will not suffice. Dure v. United States, 127 F.Supp.2d 276, 279 (D.R.I. 2001) (citing Lema v. United States, 987 F.2d 48, 51-52 (1st Cir.

1993)); see also Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992) (summary dismissal of § 2255 motion is proper where, *inter alia*, grounds for relief are based on bald assertions).

In assessing the adequacy of counsel's performance:

> [T]he Court looks to "prevailing professional norms." A flawless performance is not required. All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances.

Ramirez v. United States, 17 F. Supp. 2d 63, 66 (D.R.I. 1998) (quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) and citing Strickland, 466 U.S. at 688).

The standard applied in making that assessment is a highly deferential one. Thus,

> [The] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Counsel's judgment need not be right so long as it is reasonable. United States v. McGill, 11 F.3d 223, 227 (1st Cir. 1993). Furthermore, reasonableness must be determined "[without] the distorting effects of hindsight." Strickland, 466 U.S. at 689.

Under the second prong of the Strickland test, a petitioner

must show actual prejudice, that is, but for counsel's deficient performance, the outcome would likely have been different. Strickland, 466 U.S. at 694.

1. Failure to Call Defense Witness.

Wallace first claims that his lawyer was ineffective because he failed to call Lisa Gallant on Wallace's behalf at his second trial. Gallant had testified at the first trial that she was with Wallace one week after the robbery and on the day after the robbery and at those times Wallace had a full mustache, beard and an "Afro"-style hairdo. Wallace claims that because the first jury had requested that her testimony be re-read in its entirety and then failed to convict him, her testimony was crucial and favorable, and thus counsel's failure to call Gallant at his second trial was deficient.

"The decision whether to call a particular witness to testify is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." Lema, 987 F.3d at 54. Here, the record shows that Gallant, who was a Government witness at the first trial, had also testified that when she and Wallace met the day after the robbery, Wallace had shown her a handgun and stated that he had to help his brother with something and he was leaving the next day. As the Government points out, counsel could have reasonably concluded that this testimony would have hurt Wallace's defense as much as help it, by undercutting Wallace's denial of control of the apartment and his claimed ignorance about

the presence of guns in the apartment. Thus, counsel's decision not to call Gallant was not unreasonable in light of the circumstances. Id.

Even if the failure to call Gallant could be deemed to be deficient, there was no prejudice to Wallace. Although Gallant's testimony concerning Wallace's appearance could have had a bearing on the jury's failure to reach a verdict at the first trial, there was substantial eyewitness identification evidence and other evidence in the second trial portraying Wallace as one of the robbers. Moreover, Gallant's testimony concerning Wallace's possession of a gun at the Pleasant Street apartment and his reference to having to help his brother -- both occurring the day after the robbery -- would likely have been prejudicial as well. Thus, it is far from likely that the outcome would have been different had she testified, see Strickland, 466 U.S. at 693-94, and this claim fails.

2. Failure to Introduce Transcripts

Wallace's claim that his counsel was ineffective in failing to introduce transcripts of the testimony of Lisa Gallant, Donn DiBiasio and Donna Gallinelli from the first trial may be quickly put to rest. The transcript of Gallant's testimony was inadmissible at Wallace's second trial, as it clearly did not meet any of the enumerated exceptions to the hearsay rule, see Fed. R. Evid. 803, and there is no indication that she was otherwise "unavailable" to

appear as a witness. See Fed. R. Evid. 804(a). Because both DiBiasio and Gallinelli testified at the second trial, transcripts of their respective testimony at the first trial were available only for purposes of impeachment see Fed. R. Evid. 613, and Wallace's counsel in fact so used such transcripts at the second trial. (See 11/6/01 Tr. at 3-9 and 58-59.) It follows that any attempt to introduce them would have been unsuccessful, and counsel's performance was not deficient.

3. Failure to Object to Identification Evidence

Wallace next claims that the photo array identification process was "impermissibly suggestive" and improperly influenced Gallinelli's in-court identification of Wallace as one of the robbers and therefore that counsel was ineffective in failing to challenge this evidence before the trial. Whether counsel was deficient in failing to object to this evidence depends on the circumstances at the time, including the likelihood that counsel would have succeeded in making these challenges.

A conviction based on eyewitness identification at trial following a pretrial identification by photograph will be reversed on a constitutional basis "only if the very substantial likelihood of misidentification was irreparable, despite the defendant's opportunity to cross-examine the witness about the accuracy of the identification." United States v. Holliday, 457 F.3d 121, 125 (1st

Cir. 2006)(quoting Neil v. Biggers, 409 U.S. 188, 199-200 (1972) and citing ...) See United States v. Maguire, 918 F.2d 254, 263 (1st Cir. 1990)(same). See also Fed. R. Evid. 801(d)(1)(C) (out-of-court identification evidence routinely is admitted in federal courts).

Even if an identification procedure is deemed "impermissibly suggestive," it must still be found unreliable. Maguire, 918 F.2d at 263 (citing Simmons v. United States, 390 U.S. 377, 384 (1968). Reliability under the second prong is determined in view of various factors, including the witness's opportunity to view the suspect, the degree of attention, the accuracy of prior description, the witness's level of certainty, and the time lapse between the offense and the identification). Id. (citing Biggers, 409 U.S. at 199-200).

Here, Wallace has pointed to no evidence, apart from the relative size of Wallace's photograph, to show that the photographic array from which Gallinelli identified Wallace before trial was impermissibly suggestive. The fact that the photos were face-shots only did not render them impermissibly suggestive so as to be objectionable, nor the fact that Wallace was several years younger with lighter facial hair in his photo. Similarly, the relative sizes of the photos in the array in and of itself are not sufficient to warrant exclusion of the photo identification. See

Holliday, 457 F.3d at 126 (police need only use reasonable efforts when constructing photo array).

Even if the photo array were deemed impermissibly suggestive, the process was not unreliable. See Maguire 918 F.2d at 263 (delineating factors). Gallinelli was an eyewitness and victim of the robbery, and she undeniably had a close view of Wallace during the robbery as he spoke to her and then removed items from the display case. She viewed the photo array within two weeks after the robbery and did not hesitate in picking out his photo or in identifying him at trial. Moreover, contrary to Wallace's contention, Wallace's appearance in the photo was not substantially different from Gallinelli's prior verbal description of Wallace at the robbery. As noted above, she readily identified Wallace in open court. In addition, she was vigorously cross-examined concerning her pretrial identification of Wallace by defense counsel. Thus, there was no "irreparable" likelihood of misidentification. Halliday, 457 F.3d at 125. See also United States v. Henderson, 320 F.3d 92, 100 (1st Cir.2003) (reliability of photo identification process determined "under the totality of the circumstances") (internal quotation marks omitted).

Because the photo array identification was reliable, any attempt by counsel to have that evidence excluded would not have been successful, and Wallace's counsel was not ineffective for

failing to make a pretrial objection - or to object at trial - to the identification evidence. See Vieux v. Pepe, 184 F.3d 59, 64 (1999) (counsel's performance not deficient for failure to pursue futile tactics).

4. Testimony of Prison Informant

Wallace next claims that counsel's failure to challenge the testimony of Wallace's fellow inmate Willie Preston constituted ineffective assistance.[12] (Pet. Mem. at 12-15.) Wallace contends that Preston's testimony violated Wallace's rights under Massiah v. United States, 377 U.S. 201 (1964)[13] and that counsel should have mounted a pretrial challenge to test the credibility of Preston's testimony or alternatively objected to that testimony at trial.

This claim fails on both counts. First, the question of whether Preston's testimony was a violation of Wallace's rights under Massiah was already litigated in his direct appeal. The Court of Appeals found that Wallace could not establish that Preston had been enlisted by the Government to deliberately elicit

---

[12] As noted above, Preston testified that Wallace told him of his participation in the robbery of a gun store, that he was linked to the robbery because of a cell phone left at the robbery scene and that he 'had a different look' and had grown facial hair after the robbery. (11/6/07 Tr. at 17-18.)

[13] In Massiah the Supreme Court held that the Government may not deliberately elicit incriminating information from a defendant postindictment, either directly or through an agent, including a fellow inmate of the defendant. Id. at 205.

testimony from Wallace while at the Wyatt Detention Center and, thus, Wallace's Massiah claim, even if not forfeited, was without merit. See 71 Fed. Appx. 868 at **2. Wallace may not relitigate that claim in this postconviction proceeding. See Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994) (issues dispose of in a prior appeal may not be re-litigated by way of a 2255 motion)(citing Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967)); Murchu v. United States, 926 F.2d 50, 55 (1st Cir. 1991)(same).

Given this finding on appeal, Attorney Flanagan's failure to raise this issue before trial does not constitute deficient performance, since such an objection was bound to fail. See Vieux, 184 F.3d at 64. Counsel likewise adequately challenged the veracity of Preston's testimony at trial. He vigorously cross-examined, and attacked Preston's potential bias through repeated references to his cooperation agreement with the Government. (11/6/01 Tr. at 19-24.) Wallace points to no other facts or omissions that would suggest deficient performance. Thus, counsel's performance was not deficient. See Strickland, 466 U.S. at 693.

4. Failure to Challenge Inconsistent Testimony at Trial

Wallace also claims that his counsel failed to object to, challenge, or impeach allegedly "false" testimony given by

Gallinelli, DiBiasio and Preston at the second trial. According to Wallace, had counsel done so, this Court could have held a hearing out of the presence of the jury to determine the credibility of those witnesses. (Pet. Mem. at 33.)

This claim fails for several reasons. First, this Court has already determined that the respective testimony of each of these witnesses was not substantially different between the first and second trial, particularly with respect to Wallace's physical appearance. See discussion supra at 9-13.

Second, contrary to Wallace's assertion, at the second trial his counsel vigorously cross-examined both Gallinelli and DiBiasio concerning Wallace's physical appearance, including confronting them with their testimony at the first trial. During the cross-examination of Gallinelli, counsel repeatedly asked if she remembered testifying during the previous trial that the perpetrator did not have any facial hair or possibly a very light mustache. (See 11/6/01 Tr. at 59.) Similarly, while cross-examining DiBiasio, counsel inquired extensively concerning the alleged discrepancies between DiBasio's descriptions of the first robber at the first trial as being "clean shaven" and second trials. (Id. at 3-10.) Thus, Attorney Flanagan's cross-examination of both eyewitnesses was vigorous and well exceeded the bare minimum of reasonable representation required under Strickland.

The fact that the jury found sufficient evidence linking Wallace to the robbery to convict him does not mean that his counsel was deficient. See Scarpa, 38 F.3d at 8 (counsel not required to provide a "flawless performance"). Although Wallace contends that the issue of the robber's facial hair was crucial to his identification, there is no dispute that Gallinelli was able to correctly identify him as one of the men who robbed the gun store. Indeed, Gallinelli's ability to identify Wallace with and without facial hair belies the assertion that her earlier identification was incorrect.

Finally, Wallace's contention that his counsel should have requested a pretrial hearing on the credibility of the Government's witnesses ignores the fundamental principle that the credibility of witnesses is for the jury or fact-finder to determine at trial, where their testimony can be subjected to cross-examination. For that reason, this Court would have denied a request for such a hearing, and thus, Wallace's counsel was not deficient in failing to make such a request.

In short, Wallace has failed to show ineffective assistance on the part of his counsel with respect to the testimony of Gallinelli and DiBiasio, and Preston, and his claim must fail.[14]

---

[14] Wallace's related claim (Ground Seven, Pet. Mem. at 42-44), concerning this Court's refusal to admit Gallinelli's written

5. <u>Failure to Object to Photographs</u>

Wallace further claims that the failure of his counsel to object to the use of Wallace's booking photo and his Florida driver's license at trial constituted ineffective assistance of counsel.

Because this Court has already determined that the use of both photos was proper, <u>see</u> discussion supra at 13-14, counsel's failure to object to them cannot be deemed deficient. Moreover, even if such failure was somehow objectively deficient, Wallace has made no showing of how he was prejudiced in view of the other evidence, including eyewitness testimony and the cell phone, linking him to

---

statement given to police shortly after the robbery, in which she described the robbers, need not be addressed by this Court here, as such claim could have been raised on appeal but was not, and petitioner has shown neither cause nor prejudice. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982) (a § 2255 motion to vacate does not serve as a substitute for an appeal). Even if considered on its merits, the claim falls. As this Court indicated at trial (11/6/01 Tr. at 77)), Gallinelli had been thoroughly cross-examined by Wallace's counsel concerning her statement and had admitted to making the description therein, and thus the statement itself was not inconsistent and was not an admission and thus was inadmissible. <u>See</u> <u>Tome v. United States</u>, 513 U.S. 150, 157 (1995) (prior consistent statements admissible under Fed. R. Evid. 801(d)(1) only to rebut charges of recent fabrication or motive); <u>see</u> <u>also</u> <u>United States v. Simonelli</u>, 237 F.3d 19,27-28 (1st Cir. 2001).

The latter observation also disposes of Wallace's accompanying claim that appellate counsel should have raised this Court's refusal to admit Gallinelli's statement as a ground of appeal. Here, such a claim would likely not have been successful on appeal and thus appellate counsel was not remiss in failing to raise it. <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000)(to show ineffective assistance on the part of appellate counsel, a petitioner must show that "a particular nonfrivolous issue was clearly stronger than issues that appellate counsel did present").

the robbery in question. Thus, this claim fails.

The foregoing conclusion also disposes of Wallace's claim that appellate counsel was ineffective in failing to challenge the improper use of the booking and license photographs on appeal. To show ineffective assistance by appellate counsel, a petitioner must show that "a particular nonfrivolous issue was clearly stronger than issues that appellate counsel did present." Robbins, 528 U.S. at 288; see Lattimore v. Dubois, 311 F.3d 46, 57 (1st Cir. 2002)(same). Here, a challenge to their admission would likely not have prevailed on appeal, particularly given the absence of a contemporaneous objection at trial, and thus appellate counsel was not deficient in failing to raise such a claim.

6. Failure to Challenge Closing Remarks

Wallace next claims his counsel was ineffective in failing to challenge certain alleged "improper remarks" in the Government's summation. As discussed supra at 14-19 , the prosecutorial remarks that Wallace challenges were not improper, nor did they violate his due process rights. Since the Government's remarks did not amount to a denial of due process, Attorney Flanagan's failure to object to them did not constitute ineffective assistance and this claim fails. See United States v. Jackson, 918 F.2d 236, 243 (1st Cir.1990) ("A defense counsel's failure to object to [a] prosecutor's remark ... [may be] consistent with a reasonable tactical decision to minimize any harm the comment ... may have

caused, by not inviting further attention to it."); Cohen v. United States, 996 F. Supp. 110, 118 (D.Mass. 1998) ("[a]n ineffective assistance of counsel claim is not cognizable when, in hindsight, defense counsel failed to object to, or raise issue with, every minuscule instance that opposing counsel may arguably have misquoted or mis-argued the evidence.")(emphasis in original).[15]

7. Alleged Inadequate Closing Argument

Wallace next claims that his counsel's summation was "incompetent." Specifically, Wallace points to Attorney Flanagan's statement that "[r]easonable doubt is not necessarily a question of whom you believe .... You can believe both sides and have reasonable doubt." (11/8/01 Tr. at 32.) This statement, contends Wallace, impermissibly shifted the burden of proof to the defendant, suggesting that even if the jurors had reasonable doubts, they were "at liberty to return a verdict of guilt." (Pet. Mem. at 45-46.)

Examined in context, however, it is clear that the comment was neither incompetent nor misleading.[16] Attorney Flanagan started his

---

[15] Wallace also challenges his appellant counsel's failure to raise an objection regarding improper vouching in the Government's closing, claiming that such failure constitutes ineffective assistance of appellate counsel. This claim is flatly contradicted by the record. Wallace's appellate counsel, did, in fact, raise the issue of improper vouching in the Government's summation as part of Wallace's direct appeal. The Court of Appeals rejected the claim, holding that it was "wildly unlikely that this brief and isolated comment so swayed the jury that the outcome of the trial was affected." Wallace, 71 Fed. Appx. 868 at **3.

[16] The context in which this statement was made is as follows:

" ... You can see what reasonable doubt is. If you're not sure, if you're not sure, if you have reservations, if you think that maybe they

closing by stating that "[t]he defendant does not have burden of proof here. Only the prosecution has the burden of proof." (Id. at 22). As part of his closing, he specifically questioned the recollection and credibility of the Government's witnesses, before stating that the case was "about finding someone guilty only if the prosecution has met its burden, and they've not." (Id. at 39.) Thus, the cited comment did not impermissibly mislead the jurors concerning the burden of proof. Moreover, even if the jurors could have somehow misunderstood counsel's statement to mean that there was a dual burden of proof, this Court in its instructions fully explained the law on burden of proof. (Id. at 45-70).

In short, Wallace fails to show either deficient performance or prejudice resulting from his counsel's closing argument, and this claim fails.

8. Alleged Failure to Request Jury Instruction

Wallace next points to his counsel's failure to request jury instructions regarding a theory of defense, namely misidentification, as constituting ineffective assistance of counsel.

---

left a link out of the chain, okay, there's a missing link the prosecution dropped, that these events on that bad morning, they may have happened differently, they could have happened differently, okay, in a way other than what the prosecution suggests, then you got to give my client the benefit of your uncertainty. The law demands it. That's what reasonable doubt is, OK? ... Reasonable doubt is not necessarily a question of whom you believe. And you heard me right, reasonable doubt is not necessarily a question of whom you believe. You can believe both sides and have reasonable doubt. You can believe both sides and have reasonable doubt, even if you only believe the prosecution witnesses. ..."

(11/8/01 Tr. at 31-32)

While the First Circuit has not directly addressed the issue, other courts have concluded that counsel's failure to request an instruction regarding mistaken identification does not constitute ineffective assistance. See e.g., United States v. Williams, 166 F.Supp.2d 286 (E.D. Pa. 2001) (even if failure to request identification instruction constituted deficient performance, defendant was not prejudiced, as there was no likelihood of different outcome in the face of overwhelming evidence against defendant); Commonwealth v. Willard, 761 N.E.2d 971, 979-980 (Mass. App. Ct. 2002) (counsel's failure to request an instruction regarding mistaken identification did not constitute ineffective assistance, where defense of misidentification was squarely before the jury through cross-examination of witnesses and closing arguments and jury was properly instructed on reasonable doubt and presumption of innocence).

Here, counsel's repeated questioning during cross-examination of Donn DiBiasio and Donna Gallinelli regarding their memory of the appearance of the robbers (see 11/6/01 Tr. at 3-9, 56-59, 73-74,) was sufficient to bring the issue of mistaken identification to the jury's attention, and it was clear from closing arguments of both the Government and defense counsel that identification of the robbers was a central issue in the case. In view of this, together with this Court's instructions to the jury on all issues, Wallace has not shown that counsel's failure to request an instruction concerning misidentification fell below the standard of reasonable

professional conduct.

Likewise, Wallace has not shown that the outcome of the trial would have been different, given the substantial evidence linking Wallace to the robbery, including but not limited to the cell phone left by Wallace in the store and the recovery of the stolen guns in an apartment occupied by Wallace and where he was currently residing. Hadfield v. United States, 979 F.2d 844 at *2 (1st Cir. 1992) (Table) (counsel's failure to request jury instruction to which defendant may have been entitled was not ineffective assistance, as defendant was not prejudiced in light of overwhelming evidence of guilt of drug possession).

9. Failure to File Post-Trial Motions

Wallace next claims that his counsel's failure to file certain post-trial motions such as a motion for judgment of acquittal pursuant to F. R. Crim. P. 29[17] and a motion for new trial pursuant to Fed. R. Civ. P. 33,[18] amounted to ineffective assistance. (Pet. Mem. at 48-49.) Neither claim has merit.

Both motions, according to Wallace, would have challenged the sufficiency of the identification evidence presented. However, in view of this Court's earlier conclusion that the Government's

---

[17] Rule 29 of the Federal Rules of Criminal Procedure provides that a defendant may request a judgment of acquittal if the evidence is "insufficient to sustain a conviction" on the offenses charged in the indictment. Fed. R. Crim. P. 29(a).

[18] Rule 33 of the Federal Rules of Criminal Procedure provides that a defendant may file a motion for new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a).

identification evidence was properly admitted and was more than sufficient to support a guilty verdict, see discussion supra at 9-14, neither motion would have been successful. Thus, counsel was not deficient in choosing not to bring such a motion. See Vieux, 184 F.3d at 64 (counsel need not pursue futile tactics).

10. Alleged Errors Relating to Jury

Wallace next claims that his counsel was ineffective in failing to strike for cause a potentially biased juror. (Pet. Mem. at 49-50.) The juror in question disclosed during empanelment that she had met Zechariah Chafee, a prosecutor working in the same office as the prosecutor at Wallace's trial, and spoken briefly with him at several local fundraiser events. (See Transcript of Jury Impanelment conducted on October 23, 2001 ["10/23/01 Tr."] at 57, 59-60.) Wallace alleges that his counsel's failure to object to her service on the jury denied him his constitutionally guaranteed right to an impartial jury.

Wallace points to no facts supporting his claim that this juror was not impartial. In fact, the jury deliberated for less than three hours before returning with a verdict of guilty on all four charges, and there was no evidence that the verdict reached was not unanimous. Moreover, the Court notes that Mr. Chafee was not at all involved with the prosecution of Wallace. Thus, any motion to strike this juror would have been denied, and counsel was not deficient in failing to make such a motion, nor was Wallace prejudiced by the omission. In any event, Wallace could have used

a preemtory challenge to strike that juror, but did not.

Finally, Wallace's conclusory claim that counsel should have requested that the jury be polled as to its verdict is not supported by any argument and may be denied on that basis. See United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir.1997) ("We have steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation..."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir.) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In any event, there was no error. See United States v. Gerardi, 586 F.2d 896, 899 (1st Cir.1978) (counsel's failure to request a poll of the jury does not fall outside the range of competence expected of attorneys in criminal cases); United States v. Costa, 691 F.2d 1358, 1363-64 (11th Cir. 1982)(same).

C. *Blakely* Claim

In his final claim, Wallace asserts that the two-point obstruction of justice enhancement in his sentence violates his due process rights, invoking Blakely v. Washington, 542 U.S. 296 (2004) and Apprendi v. New Jersey, 530 U.S. 446 (2000).

This claim may be quickly put to rest. Since the instant motion to vacate was filed, the Supreme Court decided United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005),[19] so that "Blakely

---

[19] Booker reaffirmed that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum penalty authorized by the facts established by a plea of

claims are now viewed through the lens of [Booker]." Cirilo-Munoz v. United States, 404 F.3d 527, 532 (1st Cir. 2005). The First Circuit has noted, as have other circuits, that Booker is not retroactive to convictions that were final when that case was decided. See Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005) and cases cited (§ 2255 petitions are unavailable to advance Booker claims in the absence of Supreme Court decision rendering Booker retroactive). See also United States v. Fraser, 407 F.3d 9, 11 (1st Cir. 2005)(same). Wallace's conviction became final when further review was denied by the Supreme Court in March 2004, prior to both Booker and Blakely, and thus neither case applies.

Retroactivity aside, Booker does not help Wallace in any event, as the obstruction of justice sentencing enhancement was based on conduct which occurred before this Court, namely, giving false testimony at his trial, and thus there was no question of proof. Thus, this claim fails.

The Court has reviewed Wallace's other arguments and finds them to be without merit.

III. CONCLUSION

For all of the foregoing reasons, the remaining clams in

---

guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt," and declared the Guidelines to be constitutional only to the extent that they are advisory rather than mandatory for sentencing judges. Booker, 125 S.Ct. at 756 (emphasis added).

Wallace's motion to vacate, as amended, are DENIED. In short, Wallace was fairly tried, justly convicted, and appropriately resentenced after this Court issued its Memorandum and Order of May 25, 2006.

IT IS SO ORDERED:

Ronald R. Lagueux

Ronald R. Lagueux
Senior U.S. District Judge
December 12, 2007